F I L E D
Clerk
District Court

FEB 12 2014

for the Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| JESUS I. TAISAGUE,<br><br>       Plaintiff,<br><br>       v.<br><br>ELOY S. INOS, in his official and personal capacities, et al.,<br><br>       Defendants. | Case No. 1:13-cv-00023<br><br>**ORDER GRANTING IN PART THE MOTION TO DISMISS** |

  This matter raises a federal Contract Clause challenge to the operation of a public retirement system. Other claims are raised as well, including one based on the Commonwealth of the Northern Mariana Islands ("Commonwealth") Constitution. Defendants have filed a motion seeking dismissal of most of these claims, including both constitutional challenges. (ECF No. 10 (hereinafter "Motion").) The Court GRANTS this motion on all parts save the claim based on the Commonwealth Constitution. With that Commonwealth claim, the Court certifies two questions to the Commonwealth Supreme Court and withholds its ruling until that court's resolution.

## I. BACKGROUND

  Plaintiff Jesus Taisague is a retired Commonwealth employee. (ECF No. 1 at 4 (hereinafter "Complaint").) His service in the government entitles him to full retirement benefits—including both pension payments and health insurance coverage—from the Commonwealth Retirement Fund. (*Id.* at 4–5.) He has been receiving these retirement benefits for over a decade. (*See id.* at 1, 4, 7.)

1

Taisague alleges that the Retirement Fund is in a poor financial state. (*Id.* at 8.) This is due, in part, to the Commonwealth's failure to make statutorily required contributions to the Fund. (*Id.*)

Previously, this Court adjudicated a class action involving the Commonwealth Retirement Fund and the benefits to be paid out. (*See* Complaint at 10; *see also* Case No. 1:09-cv-00023.) That case ultimately settled, with the settlement class receiving at least 75% of their pension payments—potentially 100% if the Commonwealth's economy improves—and all of their health insurance coverage. (Complaint at 10; *see* Case No. 1:09-cv-00023, ECF No. 468-1 at 3, 10–12, 25.)

Taisague opted out of that settlement. (*See* Complaint at 9; Case No. 1:09-cv-00023, ECF No. 547.) Yet despite opting out, the Commonwealth has elected to apply the settlement terms to him and others like him. (*See* ECF No. 14 at 3–4.)

Taisague now sues on his own behalf to recover 100% of his pension payments and his health insurance coverage. (Complaint at 4.) He names five defendants: Governor Eloy Inos, the Commonwealth, the Retirement Fund, the Commonwealth Department of Finance, and twenty Doe Defendants. And he brings eight causes of action: breach of contract (count 1), violation of the U.S. Constitution's Contract Clause (count 2), violation of the Commonwealth Constitution's contract clause (count 3), violation of due process (count 4), deprivation of rights under 42 U.S.C. § 1983 (count 5), breach of fiduciary duty (count 6), unjust enrichment (count 7), and declaratory relief (count 8).

The first four claims are based largely on common acts and alleged rights. Those acts and rights are: Taisague's contractual right to his pension benefits; the Commonwealth's failure "to pay their actuarially determined contributions;" its failure "to pay statutorily required taxes into the Fund;" its "passing legislation purporting to diminish or eliminate their obligations;" the Retirement Fund's filing for bankruptcy; the "declaring [of] an 'emergency to seize the Fund;" and the settlement

agreement in the related Retirement Fund case, "which transfers all of the assets of the Retirement Fund to the [Betty Johnson] Settlement Fund . . . ." (*See id.* at 11–13.)

In response to the complaint, the Commonwealth has filed a motion to dismiss the second through fifth causes of action, as well as to dismiss the Department of Finance in entirety. (Motion at 16.)

## II.   JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental).

## III.   STANDARD

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint must allege "sufficient facts to raise" a plaintiff's "right to relief above the speculative level." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It must make the right to relief plausible. *Twombly*, 550 U.S. at 557. All allegations must be assumed true, *id.* at 555–56, but legal conclusions need not be, *Iqbal*, 556 U.S. at 678. The factual allegations must "give fair notice and . . . enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). Factual allegations also "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

## IV. DISCUSSION

Five issues are presented. They regard (1) Defendant Department of Finance's ability to be sued; (2) the United States Constitution's Contract Clause; (3) the Commonwealth Constitution's contract clause; (4) due process; and (5) Section 1983. The Court rules on each five in turn.

### A. DEPARTMENT OF FINANCE

The Commonwealth argues that the Department of Finance must be dismissed because it lacks the capacity to be sued. (Motion at 2.) It correctly points to numerous agencies that, by statute, may be sued, e.g., 1 CMC § 8315(e), 2 CMC § 2121, 2 CMC § 4431, and correctly notes that no such provision authorizes suits against the Department of Finance, see 1 CMC § 2251–25103. (*Id.* at 2.) In response, Taisague contends the Department can be sued because they have occasionally been sued in the past. (ECF No. 12 at 7–8 (hereinafter "Opposition").)

The Department of Finance is not a proper party, and it is ordered dismissed from all claims. Under the Eleventh Amendment, "agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005). The state may waive this immunity. *Id.* Waiver requires a "clear declaration." *E.g.*, *Demshki v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001) (emphasis omitted). Logically, a statute authorizing suit against an agency waives that immunity, and statutory silence retains it. Because the Commonwealth has not waived the Department of Finance's immunity from suit, the Department should be dismissed from all claims. *Cf. Austin v. State of Ariz*, No. CV–08–1222–PHX–LOA, 2008 WL 4368608, *5 (D. Ariz. Sept. 22, 2008) (also dismissing state agency in response to same argument, but doing so because plaintiff did not address the argument).

At the motion's hearing, Taisague presented a new theory as to why the Department of Finance may be sued: The Commonwealth Constitution allows it. Article X, section 9 of that constitution declares that "[a] taxpayer may bring an action against the government or one of its instrumentalities

in order to enjoin the expenditure of public funds for other than public purposes or for a breach of fiduciary duty." Taisague's claims are based on breach of fiduciary duty and the Department of Finance is a Commonwealth instrumentality, so the suit is allowed. Or so his argument runs.

This theory fails. "[C]onstitutional provisions expressing a general waiver of sovereign immunity, without *expressly* subjecting the state to suit in federal court, do not waive Eleventh Amendment immunity." *Demshki*, 225 F.3d at 989 (emphasis omitted and added). This Commonwealth provision says nothing of waiving immunity in federal proceedings. Nor does the Commonwealth Supreme Court read it as granting such immunity. Rather, that court apparently views it as granting standing, not removing immunity. *See generally Rayphand v. Tenorio*, 2003 MP 12; *Mafnas v. Commonwealth of the N. Mariana Islands*, 2 NMI 248 (1991). And while true that some language in those cases may support viewing the provision as removing immunity, no words clearly waive immunity in federal proceedings. Because no Commonwealth law clearly waives the Department of Finance's immunity in federal proceedings, it still possesses it. Therefore, the Department of Finance is ordered dismissed from all claims in this lawsuit.

## B. FEDERAL CONTRACT CLAUSE

The Commonwealth seeks dismissal of the Contract Clause claim under the United States Constitution. (Motion at 4–6.) These claims involve four elements, including even equitable considerations.[1] Two of these elements require the existence of a contract right and the impairment of that right. *See San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys.*, 568 F.3d 725, 736–37 (9th Cir. 2009). The Court finds the existence of a contract right but does not find that right

---

[1] Contract Clause claims are governed by an inquiry that "includes (1) whether a contract exists as to the specific terms allegedly at issue, (2) whether the law in question impairs an obligation under that contract and (3) whether the discerned impairment can fairly be characterized as substantial." *San Diego Police Officers' Ass'n v. San Diego City Emps. Ret. Sys.*, 568 F.3d 725, 736–37 (9th Cir. 2009) (citations omitted). But even if laws "substantially impair state or local contractual obligations," they "are nevertheless valid if they are reasonable and necessary to serve an important public purpose." *Id.* at 737 (internal quotation marks and citation omitted).

5

impaired. Because lack of impairment is dispositive of the claim, the Court does not analyze the remaining elements.

### 1. Contract Scope

The first element requires determining the scope of the contractual rights. Taisague claims he has a contractual right to (1) the promised pension benefits, (2) the actuarially determined contributions, and (3) the allotted tax revenue contributions. (*See* Complaint at ¶ 69.) The Court concludes his contractual right includes at least the latter two.

To determine the scope of contractual rights, "federal rather than state law controls as to whether state or local statutes or ordinances create contractual rights protected by the Contracts Clause." *San Diego Police Officers' Ass'n*, 568 F.3d at 737 (citation omitted). But "federal courts [still] look to state law," *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 610 F.3d 1099, 1101 (9th Cir. 2010) (internal quotation marks omitted), and "accord respectful consideration and great weight to the views of the State's highest court," *San Diego Police Officers' Ass'n*, 568 F.3d at 737 (internal quotation marks and citation omitted).

Federal law requires that "the state's statutory language . . . evince a clear and unmistakable indication that the legislature intends to bind itself contractually . . . ." *Id.* The Commonwealth Supreme Court has not yet set a standard specific to determining when the legislature binds itself contractually. It has, however, said that statutory language must "be given its plain meaning" where clear; and where necessary, to determine legislative intent by reading the statute as a whole. *See, e.g.*, *Saipan Achugao Resort Members' Ass'n v. Wan Jin Yoon*, 2011 MP 12, ¶ 23. It appears reasonably likely that the Commonwealth court would apply this same standard to determining the existence of a legislative contract. This standard is essentially equivalent to the federal one: Federal law looks for clear intent of contractual relationship, and Commonwealth law would look for a plain expression of

6

that intent. So if the Commonwealth clearly intends it, it may create contractual rights to pension benefits. *Cf., e.g.*, *Retired Employees Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 266 P.3d 287, 296–98 (Cal. 2011) (state legislation may create contractual rights to pension benefits; this right may be implied).

The Commonwealth has clearly and unmistakably bound itself to a contractual relationship with retirement benefits. Its constitution declares that "[m]embership in an employee retirement system of the Commonwealth shall constitute a contractual relationship."[2] Commonwealth Constitution, art. III, sec. 20(a). It goes on to say that the "[a]ccrued benefits of this system shall be neither diminished nor impaired." *Id.* Interpreting these provisions, the Commonwealth Supreme Court too found the existence of this contractual relationship. *See Pangelinan v. N. Mariana Islands Retirement Fund*, 2009 MP 12, ¶ 22.

This contractual relationship includes at least some statutory provisions. The constitutional text compels this. It is the *membership* itself that is the contract. *See* Commonwealth Const., art. III, sec. 20(a). If the constitution instead intended to limit the contract only to accrued benefits, it could have written so. Moreover, this interpretation seems in accord with the Commonwealth high court's jurisprudence. Implicitly recognizing a vast contractual relationship, it held that "principles of contract law" not only determine the extent of a retiree's accrued benefits, but also govern the relationship between retirees and the Retirement Fund. *See Pangelinan*, 2009 MP 12 at at ¶¶ 22–23 (applying contract law principles of misrepresentation and mistake to analyze whether the retiree's "action, or lack of action, caused him to ratify the terms [of his retirement]").

This vast contractual relationship includes the statutory requirement of government contributions. Commonwealth law requires that "[t]he government . . . make contributions to the Fund

---

[2] At least nine other state constitutions similarly establish contractual rights to a pension through their respective constitutions. *See* Alaska Const. art. III, § 7. Ariz. Const. art. XXIX, § 1; Haw. Const. art. XVI, § 2; Ill. Const. art. XIII; La. Const. art. I, § 23; Mich. Const. art. IX, § 24; N.Y. Const. art. V, § 7; Tex. Const. art. I, § 16; Wis. Const. art. I, § 12.

7

each year on an actuarially funded basis" and "under an acceptable actuarial funding method . . ." 1 CMC § 8362(a); *see also* Commonwealth Pub. L. No. 6-17, § 8342 (1989). It also requires that the Commonwealth contribute a portion of the hotel occupancy tax and alcoholic excise tax to the Retirement Fund. 1 CMC § 8365 (stating that this contribution is in effort "to preserve the actuarial soundness of the fund"). The Commonwealth legislature apparently intended these contributions as falling within the contractual right. In enumerating the law's purpose, one was "to provide for an actuarially sound, locally funded pension system pursuant to [an agreement] and *in accord with Constitutional provisions protecting the rights* of government employees." 1 CMC § 8301 (emphasis added); *see also* Commonwealth Pub. L. No. 6-17, § 8301 (1989); *id.* § 8342 (requiring that these contributions be large enough to make the Retirement Fund actuarially sound by 2029); *cf.* Commonwealth Pub. L. No. 15-14, § 1 (2006) (extending this deadline of actuarial soundness to 2045).

Other courts have interpreted similar statutes promising an actuarially sound fund as forming part of the contract. The Supreme Court of Pennsylvania, for instance, interpreted a city charter requiring an "actuarially sound pension and retirement system" as part of an employee's contract with the city. *See Dombrowski v. City of Philadelphia*, 245 A.2d 238, 240, 244–47 (Pa. 1968). Explicitly following the Pennsylvania court's reasoning and adopting the same conclusion is the Washington Supreme Court. *See Weaver v. Evans*, 495 P.2d 639, 648–49 (Wash. 1972) (Where "the legislature has over a span of years indicated a deep concern with the actuarial soundness of the retirement system, and that concern has culminated in the express adoption of a systematic method of funding to ultimately attain the desired soundness, then the principle of systematic funding so adopted becomes one of the vested contractual pension rights flowing to members of the system."). Still more courts found that statutes requiring the government to make actuarially sound contributions form part of the employee's contractual rights. *See Dadisman v. Moore*, 384 S.E.2d 816, 826–28 (W. Va. 1988); *Valdes v. Cory*, 139 Cal. App. 3d 773, 783–88 (Cal. Ct. App. 1983); *see also Taylor v. State and Educ.*

8

*Employees Group Ins. Program*, 897 P.2d 275, 280 (Okla. 1995) (in dicta, stating that the court "would not hesitate to find that [the contract's] terms had been violated in a situation where the actuarial soundness of the fund were threatened").

To be sure, courts in other jurisdictions have found there is no contractual right to an actuarially sound fund. But those cases all adjudicated meaningfully different facts. Take the Kentucky case of *Jones v. Bd. of Trustees of Kentucky Retirement Systems*, 910 S.W.2d 710 (Ky. 1995). There, the government chose to contribute to the retirement system at the actuarially sound rate of the previous year, which was no longer a sound rate for the current year. *See id.* at 712–13, 715. This continued funding at a relatively significant rate was crucial to that court's analysis, with the court distinguishing other cases where the government just stopped contributing altogether. *See id.* at 715. This led the court to state that the contractual right "does not include oversight of every aspect of the process . . . " *Id.* Through this lens, it appears the court's holding is best read as limiting the contractual right. It is not a right to a have a retirement system that is completely actuarially sound, but only a right to have a system that is largely sound.

Here, there plausibly is a retirement system that is not actuarially sound. According to legislative findings, the Retirement Fund "is only 46% funded," facing an unfunded liability of around $470 million. Commonwealth Pub. L. No. 15-70, sec. 2 (2007); *see also* 1 CMC § 8313, Commission Comment. This amount is over thrice the Commonwealth's annual budget. *See* PL No. 18-18, sec. 201, p.12 (listing Commonwealth's "[t]otal identified budgetary resources" as $145,954,000). And while this actuarial analysis now differs due to the related class action settlement (ECF No. 13 at 3–4 (hereinafter "Reply"))—the unfunded liabilities likely decreased because most retirees now receive smaller pension payments—undertaking this analysis requires examining evidence. These examinations are saved for summary judgment.

9

Then there is a Michigan Supreme Court decision holding that there was no contractual right for government employees to control the government's methods of funding the retirement system. *See Kosa v. Treasurer of State of Mihcigan*, 292 N.W.2d 452, 459–60 (Mich. 1980). But that case differs because Michigan's constitution establishes a narrower contractual right than the Commonwealth's. Its constitution explicitly limits the contractual obligation to only the "accrued financial benefits." *See* Mich. Const. art. 9, § 24 ("The accrued financial benefits of each pension plan and retirement system of the state and its political subdivisions shall be a contractual obligation thereof which shall not be diminished or impaired thereby."); *Kosa*, 292 N.W.2d at 459. This limitation was critical to the court's finding that the contractual right did not include the right to assure that the retirement fund is actuarially sound. *See Kosa*, 292 N.W.2d at 460 ("A clear distinction must be drawn between the right to receive pension benefits and the funding method adopted by the Legislature to assure that monies are available for the payment of such benefits.").

Finally, there is *People ex rel. Illinois Federation of Teachers, AFT, AFL-CIO v. Lindberg*, 326 N.E.2d 748 (Ill. 1975), which held that employees had no "presently existing contractual right upon which to base a challenge to appropriation reductions . . . ." *Id.* at 753–54. In some ways, this case is similar to the one here. Illinois, like the Commonwealth, has a constitution making "membership" in the retirement system an "enforceable contractual relationship," and it has a statute requiring that the government make contributions on an actuarial basis. *Id.* at 270–71, 273–74. And unlike other courts, the Illinois court would not infer legislative intent to make actuarial soundness part of the contractual relationship without an explicit declaration. *See id.* at 753 ("[H]ad the legislature intended to establish a present contractual relationship . . . it would have been a simple matter to so state."). But here, there is such an explicit declaration. The Commonwealth legislature stated that the statutory requirement of government contributions was created "in accord with Constitutional provisions protecting the rights of government employees," 1 CMC § 8301; Pub. L. No. 6-17, § 8301.

In review, there is at least a contractual right to statutorily required government contributions. Taisague, as a Commonwealth retiree, possessed these rights. *See, e.g.*, Stuart Buck, *The Legal Ramifications of Public Pension Reform*, 17 Tex. Rev. L. & Pol. 25, 37–38 (2012) (noting some variances between states on when the employment relationship becomes contractual, but in all circumstances it becomes contractual by the time of retirement).

### 2. Impairment

The next question is whether this right has been impaired. Impairment occurs only where a state "use[s] its law-making powers not to merely breach its contractual obligations, but to create a defense to the breach that prevents the recovery of damages." *See Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1102–04 (9th Cir. 1999). So, for example, say there is a contract between a company and a government agency to deposit certain liquids in a landfill. If the legislature later passes a law barring the deposit of those liquids, the agency now has a defense to breach, and an impairment occurs. *See id.* at 1103. An impairment also occurs where state law deprives the aggrieved party of the ability to sue for breach of contract in court. *See id.* at 1104.

No impairment has occurred here. Taisague has not pointed to any law creating a defense to a breach of contract claim here or otherwise hampering his recovery of damages in a Commonwealth action. Nor does the Court's own research reveal any such law. In fact, it appears Taisague still has a remedy in Commonwealth courts because the Retirement Fund previously obtained a Commonwealth judgment for the Commonwealth government's failure to make required contributions. (*See* Complaint at ¶ 6); *see also N. Mariana Islands Retirement Fund v. Commonwealth of the N. Mariana Islands government*, Civil Action No. 06-0367 (Commw. N. Mar. I. Super. Ct. June 29, 2009).

Yet this does not mean there is no argument whatsoever for finding impairment. Some Commonwealth employees have at least one such argument. Specifically, this argument belongs to all

Commonwealth employees whose rights vested before the passing of a 1983 law ("Pre-1983 Employees"). The complaint does not indicate when Taisague began working, but it does say that he retired in 1998 (Complaint at ¶ 22). So it is at least possible he belongs in that class.

Prior to 1983, Commonwealth court judgments against the Commonwealth government were immediately enforceable. But this changed in 1983, when the Commonwealth legislature passed a new law. This law makes Commonwealth judgments against the Commonwealth enforceable only after legislative appropriation of funds for the judgment's satisfaction. *See* 1 CMC § 7207; PL 3-68, sec. 207, p.18. Partly because of this law, seventeen Commonwealth judgments remain unsatisfied—some existing for over nine years—with them totaling over $27 million, plus interest. Commonwealth S. Bill 18-26, § 1 (2013), *available at* http://www.cnmileg.gov.mp/documents/senate/sen_bills/18/SB18-26.pdf. The Commonwealth Senate believes it "clearly unlikely" that the Commonwealth will be able to satisfy these judgments. *Id.* Thus, it is now considering "negotiat[ing] settlements" with these judgment holders for almost anything besides cash. *Id.*

One could argue that this 1983 law is an impairment because it changes the "remedies available under a contract . . . ." *Cf. General Motors Corp. v. Romein*, 503 U.S. 181, 189 (1992). Changing remedies, where so significant as to affect "the contract's obligatory force," is an impairment. *See id.* Following this argument, the contractual rights of Pre-1983 Employees would be impaired because they've effectively lost their remedy in court. Before the law, Commonwealth employees had the right to enforce their contract in court, obtain a judgment, and immediately enforce that judgment. Now, they have a right only to obtain a judgment against the Commonwealth and to hope the legislature allows them to recover on that judgment. This hope appears futile. Not only because there are several unsatisfied Commonwealth judgments enumerated in the senate bill, but also because there is a near-half billion dollar unsatisfied judgment on this very same matter—the Commonwealth's failure to pay

its contributions—in the Commonwealth courts. In short, the contract has lost all obligatory force without the threat of obtaining an enforceable monetary award.

This argument is folly. Foremost, the contract remains obligatory. A party to a contract, even if judgment proof, remains obligated to it. It is this obligation, and not payment, that matters. *See Memphis & C.R. Co. v. Tennessee*, 101 U.S. 337, 341 (1879) ("It is clear, therefore, that the right to sue, which the State of Tennessee once gave its creditors, was not, in legal effect, a judicial remedy for the enforcement of its contracts, and that the obligations of its contracts were not impaired, within the meaning of the prohibitory clause of the Constitution of the United States, by taking away what was thus given."). And for whatever it is worth, the Commonwealth may actually satisfy these obligations through alternative methods. Some of those methods may be quite valuable to the judgment holder. *See* Commonwealth S. Bill 18-26, § 1 (listing tax credits and offsets as one method).

What's more, "generally applicable" laws that are not "limited in effect to contractual obligations or remedies" rarely, if ever, constitute impairment. *See Exxon Corp. v. Eagerton*, 462 U.S. 176, 191 (1983); *Waste Mgmt. Holdings, Inc. v. Gilmore*, 64 F. Supp. 2d 537, 546 (E.D. Va. 1999). The 1983 law is generally applicable. It applies to all Commonwealth judgments—whether in contract or in tort—and does not limit itself to the field of retirement contract claims, nor even contract claims. In sum, no impairment has occurred.

## C. COMMONWEALTH CONTRACT CLAUSE

The complaint alleges a violation of the Commonwealth Constitution's contract clause. (*See* Complaint at ¶¶ 71–75); *see also* Commonwealth Constitution art. 1, sec. 1 ("No law shall be made that is . . . a law impairing the obligation of contracts . . . ."). The Commonwealth contends that this provision is defined the same as the federal version. It points to a Commonwealth Supreme Court decision, which supposedly held that United States Supreme Court cases interpreting the Contracts

13

Clause "are binding precedent upon this Court." (Motion at 4); *see also Tano Group, Inc. v. Dep't of Pub. Works*, 2009 MP 18, ¶ 59.

But this misreads that court's holding. The Commonwealth Supreme Court interpreted only the United States Constitution's Contract Clause, which applies to the Commonwealth by virtue of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, sec. 501(a). *See id.* at ¶¶ 56, 59–60. So the Commonwealth court's noting the binding nature of Supreme Court decisions on the federal Commerce Clause says nothing on how Commonwealth courts would interpret its own provision. Another Commonwealth Supreme Court decision similarly construes only the federal version. *See Matsunaga v. Matsunaga*, 2006 MP 25, ¶ 21.

The Commonwealth Supreme Court has not delineated the scope of the Commonwealth Constitution's contract clause. The Ninth Circuit has previously held that "lack of clear answers in Commonwealth [constitutional] law" may justify certifying a question to the Commonwealth Supreme Court on appeal, even when the appealing party did not request certification at the trial level. *See Peter-Palican v. Gov't of the Commonwealth of the N. Mariana Islands*, 673 F.3d 1013, 1018 (9th Cir. 2012). Because this issue requires interpreting the Commonwealth Constitution and there is no Commonwealth Supreme Court precedent on point, this Court certifies the following two questions to the Commonwealth Supreme Court:

1. Are a retiree's contractual rights "impaired" or "diminished" under article I, section 1 of the Commonwealth Constitution or under article III, section 20 of that constitution where the Commonwealth (1) does not pass any law creating a defense to the breach of the pension contract, (2) does not pass any law depriving a retiree of the ability to sue for breach of the pension contract, and (3) passes a law requiring the legislature appropriate funds before court judgments can be enforced?

2. If the answer to the first question is yes, what are the elements to a claim under these constitutional provisions?

**D. VIOLATION OF DUE PROCESS**

The complaint alleges a due process violation directly under the Fifth and Fourteenth Amendments (as opposed to under 42 U.S.C. § 1983). (Complaint at ¶¶ 76–82.) The Commonwealth seeks dismissal of this claim because it may only be brought under Section 1983 and not as a direct constitutional challenge. (Motion at 7.)

Subject to limited exceptions, "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." *See Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992), *cert. denied*, 506 U.S. 1081 (1993). So due process claims under the Fifth Amendment "must be brought under [that section]." *E.g.*, *Stamas v. Cnty. of Madera*, No. CV F 09–0753 LJO SMS, 2009 WL 2513470, *10 (E.D. Cal. Aug. 17, 2009). Because this claim is brought under the Constitution itself, it is not plausible and therefore dismissed.

Taisague's argument to the contrary lacks any merit. He contends that he may bring a direct due process claim here because a Ninth Circuit case involving a Contract Clause claim allowed a direct constitutional challenge. (Opposition at 11.) But this precedent has no applicability here. Unlike due process claims, Contract Clause claims may be brought without using Section 1983. *See* Paul M. Secunda, *Constitutional Contracts Clause Challenged in Public Pension Litigation*, 28 Hofstra Lab. & Emp. L.J. 263, 285 (2011) (noting diverging authority on whether Contract Clause violations *may* be brought under Section 1983, thus implying they are proper as a direct constitutional challenge); *see also S. Calif. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 887 (9th Cir. 2003) (Contract Clause claims may be brought under Section 1983); *Crosby v. City of Gastonia*, 635 F.3d 634, 640–42 (4th Cir. 2011) (in at least some circumstances, Contract Clause claim must be brought as direct constitutional challenge), *cert. denied*, 132 S. Ct. 112 (2011). As noted above, this claim does not survive.

### E. SECTION 1983 DEPRIVATION OF RIGHTS

The complaint alleges a Section 1983 deprivation of rights claim against all Defendants. Because this claim applies only to "persons," Taisague and Defendants agree that the claim is improper as to the Commonwealth and the Retirement Fund, and they therefore are dismissed. (Motion at 10–11; Opposition at 11); *see also DeNieva v. Reyes*, 966 F.2d 480, 482–83 (9th Cir. 1992) ("[T]he CNMI is not a "person" within the meaning of § 1983, and . . . . [n]either the CNMI nor its officers acting in their official capacity can be sued under § 1983."). With these Defendants dismissed, the only remaining Defendant that the parties have not stipulated to dismissal on this claim is Governor Inos.

But just what, exactly, is this 1983 claim? It appears to be a claim that Governor Inos violated Taisague's Contract Clause rights. (*See* Complaint at ¶ 91 ("Defendants deprived Plaintiff of his rightful benefits by taking actions that purport to directly eliminate their contractual obligation to plaintiff.").) Tasaigue's briefing confirms this reading, as he argues that "Defendants have violated their contractual obligations . . . ." (*See* Opposition at 12.) For the reasons already enumerated, Taisague's Contract Clause rights were not plausibly violated. So a 1983 claim based on those rights is dismissed.

Yet there are other plausible interpretations of this 1983 claim. Because the claim incorporates every single preceding paragraph (Complaint at ¶ 83), it includes the claim for "violation of due process . . . protected by the Fifth and Fourteenth Amendments to the U.S. Constitution" (*id.* at ¶¶ 77–78). This due process claim is not the pinnacle of clarity; it does not specify whether it is claiming for procedural or substantive due process, though its wording suggests the former. (*See id.* at ¶ 80 ("Defendants have never afforded Plaintiff a hearing before appropriating his benefits and Defendants have, instead, resisted all efforts by Plaintiff to have his claims heard.").)

Even under the most liberal construction, both due process claims are not plausible. Starting with procedural due process, "governmental decisions which affect large areas and are not directed at

16

one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient." *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261) (9th Cir. 1994). Here, Taisague targets decisions affecting large areas—decisions on how to run the Commonwealth Retirement Fund—so due process requires only general notice. Nowhere does Taisague allege or argue that he did not receive general notice. Instead, he alleges only that he was not afforded individual notice. (*See* Complaint at 14 (alleging only that Taisague was not afforded a hearing).)

Next is the substantive due process claim. Any Commonwealth obligation to pay Taisague his pension payments arises out of their contractual relationship. A state's failure to make contractually required payments does not yield a substantive due process claim. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 196 (2001); *DeBoer v. Pennington*, 287 F.3d 748, 749–50 (9th Cir. 2002). So there is no substantive due process claim arising from vested pension benefits. *See Walker v. City of Waterbury*, 601 F. Supp. 2d 420, 425 (D. Conn. 2009) ("Plaintiffs do not have a fundamental right to their vested pension benefits that is protected by the substantive component of the due process clause of the Constitution."), *aff'd on same grounds*, 361 Fed. App'x 163, 165 (2d Cir. 2010), *cert. denied*, 559 U.S. 1107 (2010); *see also Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 541 (M.D. Pa. 2012). Accordingly, no substantive due process claim is plausible here.

To summarize, the Section 1983 claim is dismissed as not plausibly pled. Most of this claim fails as a matter of law—no facts exist that could support it—so those grounds are dismissed with prejudice. But there may be facts that support a procedural due process claim, so leave to amend is granted to that end.

The Commonwealth protests granting leave to amend on the grounds of qualified immunity. It claims that Governor Inos has this immunity in full, barring prosecution of him in both his official and personal capacities. (Motion at 10–15; Reply at 4–10.) But at least the first part of this is not right.

Qualified immunity does not bar claims seeking injunctive relief against government officials acting in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, n.10 (1989); *Guam Soc. of Obstetricians and Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992), *cert. denied*, 506 U.S. 1011 (1992). Taisague is seeking such relief. (*See* Complaint at 18 (seeking "specific performance by the Defendants" to "[d]istribute appropriate retirement benefits to Plaintiff" and to "[p]ermanently enjoin Defendants from withholding any pension payments . . . .").) So qualified immunity does not bar this action to the extent it seeks injunctive relief.

The Commonwealth reaches the alternative conclusion because Taisague did not allege a separate count of injunctive relief and because he is also seeking monetary damages against Governor Inos. (Reply at 5.) This reasoning is frivolous. The complaint plausibly asserts claims for injunctive relief arising from all counts: Taisague wants his pension payments to continue, and most claims provide arguments for why this Court should enjoin Governor Inos from stopping or reducing those payments. The complaint even explicitly asserts a claim for declaratory relief. And while Taisague does also seek damages, the Court sees no sound reason why that would nullify Taisague's claim for injunctive relief. Nor does the Commonwealth provide one.

The Commonwealth advances a second argument as to why qualified immunity bars the suit against Governor Inos in his official capacity. Injunctive relief is not even obtainable against Governor Inos, it contends, because it is the legislature and not Governor Inos that controls appropriation payments. (Motion at 10–11.) It cites no authority for this argument, and the relevant authority indicates the opposite. Claims for injunctive relief against state officials require only that the official "by virtue of his office, has some connection with the enforcement of the act . . . ." *Ex parte Young*, 209 U.S. 123, 157 (1908); *cf. Am. Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (A "suit against a public official . . . seeking only injunctive relief effectively puts the government on trial, not the individual defendant.").

Governor Inos plausibly has some connection with appropriation. He invoked his power as governor to request—and ultimately obtain—the reduction of Taisague's pension benefits. (*See* ECF No. 14 at 3–4.) Additionally, the Commonwealth Office of the Governor plays a role in the required contributions to the Retirement Fund. The Director of Finance, who lies within the executive branch, see 1 CMC § 2551, is responsible for withholding and remitting employee contributions, 1 CMC § 8362(c). So the Commonwealth governor—whether Governor Inos or his predecessors—plausibly has some connection with both the reduced pension payments and the failure to contribute to the Fund.

## V. CONCLUSION

The motion to dismiss the complaint is granted in part. The Department of Finance is dismissed. The federal contract clause claim (count 2) is dismissed. The corresponding Commonwealth claim (count 3) is certified to the Commonwealth Supreme Court. The due process and Section 1983 claims (counts 4 and 5) are dismissed. Leave to amend is granted on count 5 alone; it may be amended only to assert a plausible procedural due process claim against Governor Inos. The amended complaint shall be filed no later than twenty days after the date of this order.

SO ORDERED this 12th day of February, 2014.

/s/<br>
FRANCES M. TYDINGCO-GATEWOOD<br>
Designated Judge

19